JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

BERNADETTE CALSE

**DEFENDANTS**

TRUIST BANK

**(b)** County of Residence of First Listed Plaintiff   BERKS
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   LEHIGH
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Sidney L. Gold, Esquire - The Gold Law Firm, P.C.
1835 Market St., Ste. 515, Phila, PA 19103 215-569-1999

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### INTELLECTUAL PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADEA, ADA, PHRA

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ 150,000 IN EXCESS

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE 07/23/2026

SIGNATURE OF ATTORNEY OF RECORD
/S/ SIDNEY L. GOLD, ESQUIRE

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)  Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)  County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)  Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.  Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.  Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.  Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.  Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.  Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.  Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.  Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: 1345 Airport Road, Allentown, Pennsylvania 18109

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit? Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts)
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Wage and Hour Class Action/Collective Action
6. ☐ Patent
7. ☐ Copyright/Trademark
8. ☒ Employment
9. ☐ Labor-Management Relations
10. ☐ Civil Rights
11. ☐ Habeas Corpus
12. ☐ Securities Cases
13. ☐ Social Security Review Cases
14. ☐ Qui Tam Cases
15. ☐ Cases Seeking Systemic Relief  **\*see certification below\***
16. ☐ All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify)*:_____
7. ☐ Products Liability
8. ☐ All Other Diversity Cases: *(Please specify)*_____
   _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| BERNADETTE CALSE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TRUIST BANK | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                     (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                     (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                     (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)                     (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (☑)

| | | |
|---|---|---|
| 07/23/2026 | /s/ Sidney L. Gold, Esquire | PLAINTIFF |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-1999 | (215) 569-3870 | sgold@discrimlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BERNADETTE CALSE, | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | **CIVIL ACTION NO._____** |
| | : | |
| TRUIST BANK, | : | |
| *Defendant.* | : | |
| | : | |

**COMPLAINT AND JURY DEMAND**

**I.    PRELIMINARY STATEMENT:**

1.    This is an action for an award of damages, attorneys' fees, and other relief on behalf of the Plaintiff, Bernadette Calse ("Plaintiff"), a former employee of the Defendant, Truist Bank ("Defendant"), who has been harmed by the Defendant's discriminatory and retaliatory employment practices.

2.    This action is brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA"), and the Pennsylvania Human Relations Act, 43 P.S. §951 *et seq.* ("PHRA").

**II.    JURISDICTION AND VENUE:**

3.    The jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. §§1331 and 1391, as Plaintiff's claims are substantively based on the ADEA and ADA.

4.    The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367 to consider Plaintiff's claims arising under the PHRA.

1

5.      All conditions precedent to the institution of this suit have been fulfilled and Plaintiff has satisfied all other jurisdictional prerequisites to the maintenance of this action.  On April 27, 2026, a Notice of Right to Sue was issued by the Equal Employment Opportunity Commission and this action has been filed within ninety (90) days of receipt of said notice.

## III.    PARTIES:

6.      Plaintiff, Bernadette Calse ("Plaintiff"), is an adult individual and citizen of the Commonwealth of Pennsylvania, residing therein at 7559 Dresher Road, Kempton, Pennsylvania 18109.

7.       Defendant, Truist Bank ("Defendant"), is a financial institution dually organized and existing under the laws of the State of North Carolina, maintaining a place of business within the Commonwealth of Pennsylvania at 1345 Airport Road, Allentown, Pennsylvania 18109.

8.      At all times relevant hereto, the Defendant was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of employment, and under the direct control of the Defendant.

9.      At all times material herein, the Defendant has been a "person" and "employer" as defined by the ADEA, ADA, and PHRA, and has been, and is, subject to the provisions of each said Act.

## IV.    STATEMENT OF FACTS:

10.      Plaintiff, a fifty-nine (59) year old woman, was employed by the Defendant from on or about June 21, 2022 until December 14, 2023, the date of her termination.

11.      Throughout her employment with the Defendant, Plaintiff held the position of Assistant Vice President, Branch Leader II, and at all times performed her duties in a diligent and competent manner.

2

12. As evidence of her excellent work performance, Plaintiff received positive feedback and earned multiple awards for her improvement to Defendant's Airport Road branch, including "Top 5" teammate awards, "Top 3" branch awards, and a "Top 1" teammate award.

13. In the position of Assistant Vice President, Branch Leader II, Plaintiff reported directly to Jared Alvis ("Alvis"), Vice President, Area Leader, a man in his thirties (30s).

14. By way of background, Plaintiff suffers from general anxiety disorder, hearing impairment, and coronary artery disease. Said medical conditions constitute disabilities within the meanings of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"), in that they substantially limit one or more of Plaintiff's major life activities including, but not limited to, hearing and normal circulatory function.

15. Upon her hire, Plaintiff formally disclosed that she suffers from general anxiety disorder and a hearing impairment to Defendant's Human Resources department.

16. Additionally, Plaintiff generally disclosed her disabilities to her colleagues, including Alvis. Plaintiff routinely inserted and removed her hearing aids in the presence of Alvis and other employees, who understood that she suffered from impaired hearing.

17. Throughout her employment, the Defendant, through its agents, servants, and employees, including, but not limited to, Alvis, subjected Plaintiff to a hostile work environment and discrimination based on her age and disabilities.

18. By way of example, Alvis repeatedly subjected Plaintiff to unjustified criticism, including criticism of her leadership and computer skills, and discriminatorily referred to her as "slow and stupid."

19. By way of further example, on or about September 15, 2022, Alvis informed Plaintiff of his plan to place employees at branch locations closer to their homes to decrease

3

commuting expenses. Yet, on or about October 20, 2022, Alvis rejected Plaintiff's request to transfer to Defendant's Cedar Crest branch. Instead, Alvis promoted Megan Snyder ("Snyder"), Relationship Banker, an approximately forty (40) year old woman, to Branch Manager of the Cedar Crest branch.

20.	As further evidence of Alvis's discriminatory motivation, Alvis granted transfer requests made by other significantly younger, non-disabled employees, including Amelia Sanchez ("Sanchez"), Universal Banker, an approximately twenty-one (21) year old woman, and Laisha Rizzo ("Rizzo"), Universal Banker, an approximately twenty-one (21) year old woman.

21.	On or about October 26, 2022, Alvis announced Snyder's promotion during a district-wide meeting. Alvis then mocked Plaintiff in the presence of her fellow Managers, who knew that she had requested a transfer to the Cedar Crest branch, by smirking and commenting, "sorry Bernadette."

22.	Thereafter, on or about November 2, 2022, Alvis bragged that he had caused Cindy Doll ("Doll"), Relationship Banker, a woman in her sixties (60s), to cry.

23.	As further discrimination, on or about January 30, 2023, Alvis referred to Plaintiff as "slow and stupid" when she reached for a calculator to calculate team score card metrics rather than performing the math mentally. Upon information and belief, Alvis's insult referred to his discriminatory assumptions about Plaintiff based on her age. Alvis then made another agist assumption by asserting that Plaintiff did not know how to operate a computer.

24.	Moreover, Alvis routinely undermined Plaintiff's leadership and authority by instructing her subordinate employees to circumvent her and communicate directly with him instead.

4

25. On or about February 14, 2023, Alvis's ongoing aggressive and unnecessary conduct caused Plaintiff to experience chest pain, a racing heartbeat, and numbness in her face, resulting in her need to seek treatment at the hospital emergency room.

26. On or about March 2, 2023, Alvis again diminished Plaintiff's success at the Airport Road branch, stating that she had needed a "kick in the ass… to turn the branch around."

27. Further, Alvis refused to assist Plaintiff in addressing staffing shortages caused by his personnel changes. In contrast, Alvis provided assistance to significantly younger managerial employees, including Snyder, Tonya (surname unknown) ("Tonya"), Manager, an approximately forty (40) year old woman, and Kaitlyn Mese ("Mese"), Branch Manager, an approximately twenty-nine (29) year old woman.

28. On or about May 19, 2023, during an angry and unjustified tirade, Alvis called Plaintiff a "liar," "fucking bullshitter," and "stupid," and opined that Plaintiff did not know anything.

29. In or around late May 2023, Alvis began to encourage and pressure Plaintiff's subordinate employees to make unjustified complaints against her to Defendant's Human Resources department.

30. As further evidence of age discrimination, on or about June 1, 2023, Alvis commented that Plaintiff was "showing her age," during an employee interview when she referenced a singer from the 1960s.

31. In or around early June 2023, one of Plaintiff's clients notified her that Alvis had made an unsolicited call to him and that he believed that Alvis was seeking to obtain criticism about Plaintiff's work performance.

32.     On or about June 26, 2023, Alvis notified Plaintiff of false accusations that had been made against her, including an allegation that she engaged in "account fraud." He then advised Plaintiff to resign because her termination was "imminent." When Plaintiff declined to do so, Alvis demanded that she leave the workplace.

33.     On or about June 28, 2023, Plaintiff registered a complaint of age discrimination with Brian (surname unknown) ("Brian"), Human Resources Representative. However, upon information and belief, Defendant failed to conduct an investigation or otherwise take any remedial action.

34.     The next day, Alvis again stated that Plaintiff should resign because her termination was "imminent." He then remarked that Plaintiff could not "lie [her] way out of everything," despite the fact that she had not lied about anything.

35.     Later that day, Alvis screamed at Plaintiff in the presence of her subordinates and ordered that she return to her office. Alvis then chastised Plaintiff in her office and falsely stated that she did not "know anything."

36.     The following day, on or about June 30, 2023, Alvis issued Plaintiff verbal and written disciplinary warnings based upon the false accusation that she had left confidential client information out in the open in her office.

37.     Later that day, Alvis accused Plaintiff of being unable to open accounts, despite the fact that she had been opening accounts for 16 years. Shortly thereafter, Alvis called Plaintiff and screamed at her, stating that Alvin McLaughlin ("McLaughlin"), Retail Region Leader, was "pissed" and wanted to "talk business" with her. To the contrary, McLaughlin had spoken pleasantly with Plaintiff earlier that day.

38.     On the same date, Carol Heffelfinger ("Heffelfinger"), Corporate Investigator, contacted Plaintiff about the aforementioned allegations of "account fraud." Heffelfinger informed Plaintiff that she was "baffled" by the accusations, as it was clear that Plaintiff had not violated any policies. Heffelfinger stated that she believed the accusations to be a mistake, as all of the clients with whom she spoke were satisfied with their accounts.

39.     On or about July 7, 2023, Plaintiff registered another complaint of age discrimination with Monica Bonhart-Brown ("Bonhart-Brown"), Vice President of Human Resources. Plaintiff informed Bonhart-Brown that Alvis's harassment was negatively impacting her health and exacerbating the symptoms of her general anxiety disorder. Defendant failed to take any remedial action, thereby allowing Alvis's discriminatory conduct to continue unabated.

40.     Thereafter, as Alvis's behavior continued, Plaintiff also confided in Derrell Johnson ("Johnson"), Branch Manager, and expressed that she believed that she was being targeted because of her age. Johnson admitted to Plaintiff that he also believed Alvis's conduct to be based on her age.

41.     In or around early August 2023, Plaintiff notified Bonhart-Brown that Alvis was continuing to subject her to hostile and discriminatory treatment. Shortly thereafter, Alvis commented that he knew that someone had made complaints about him, thereby insinuating that he was aware of Plaintiff's complaint.

42.     In clear retaliation against Plaintiff for opposing Alvis's unlawful discriminatory conduct, Alvis's hostility toward Plaintiff began to intensify, as he became even more critical of her work performance and leadership.

43.     In or around October 2023, Jackie Benedict ("Benedict"), Universal Banker, began to ask Plaintiff, in jest, to put in her hearing aids during conversations. Benedict also

"joked" that she could say "fuck you" or "fuck off" to Plaintiff and Plaintiff would still not hear her because of her hearing impairment. Benedict's comments embarrassed Plaintiff, as she felt that Benedict was mocking her disability.

44.    As a result of the increasingly hostile and stressful work environment, on or about October 24, 2023, Plaintiff experienced severe dizziness, chest pain, and ataxia. Plaintiff's symptoms became so severe that she left the workplace early to seek treatment at the hospital emergency room.

45.    On or about October 26, 2023, Plaintiff was discharged from the hospital. The following day, Plaintiff informed Alvis that she required medical leave until November 1, 2023, pursuant to her physician's recommendation.

46.    As such, on November 1, 2023, Plaintiff returned to work. Shortly thereafter, Plaintiff notified Defendant's Human Resources department of her hospitalization and disclosed that she suffers from a heart condition in additional to general anxiety disorder. Plaintiff also discussed the fact that she believed the symptoms of her disabilities were being exacerbated by Alvis's discriminatory treatment.

47.    Nonetheless, on or about November 3, 2023, Alvis demanded that Plaintiff memorize each of Defendant's accounts and their benefits, and warned that she would be "quizzed" on said information the following week. Alvis then threatened that Plaintiff would be subject to disciplinary action, possibly termination, if she did not memorize this information verbatim.

48.    In or around early November 2023, Alvis chastised Plaintiff for not having adequately memorized product interest rates, another requirement that Alvis did not impose on other managerial employees.

49. On or about November 7, 2023, Alvis again unjustifiably criticized Plaintiff and insisted that she accept a demotion to the role of Relationship Banker due to her allegedly poor leadership skills. Plaintiff declined to accept a demotion.

50. Thereafter, on or about November 10, 2023, Dustin Howey ("Howey"), Senior Corporate Investigator, advised Plaintiff that she had been accused of directing Benedict to enter fraudulent information in a customer's credit card application.

51. On or about December 3, 2023, Bonhart-Brown informed Plaintiff that Defendant had failed to substantiate her complaints of discrimination, but admitted that Alvis was found to have engaged in inappropriate and unprofessional conduct. In reply, Plaintiff informed Bonhart-Brown that Alvis's discriminatory conduct had only intensified and that she was preparing an additional complaint of discrimination.

52. On or about December 6, 2023, Howey informed Plaintiff that Defendant's investigation of her alleged instruction of her subordinate to commit fraud was completed "weeks ago" and revealed "no terminable offense," but that a final decision would be made by Alvis and Evan Conner ("Conner"), Assistant Vice President of Human Resources, an individual who, upon information and belief, is in his early thirties (30s).

53. On or about December 14, 2023, Defendant terminated Plaintiff's employment, allegedly based upon the false claim that she had directed a subordinate to enter fraudulent information in a credit card application.

54. As evidence of the pretextual nature of Defendant's articulated reason for terminating Plaintiff's employment, Defendant had articulated a different reason for her termination in response to her claim for unemployment compensation benefits. Therein, Defendant claimed that Plaintiff was terminated because she instructed a direct report to enter a

9

customer's salary information into their profile outside of the customer's presence. Significantly, the aforesaid does not constitute an ethical violation, and is routinely performed by Managers and Associates of Defendant.

55.    Tellingly, Defendant failed to terminate Alvis, a significantly younger, non-disabled individual, for his actual violations of Defendant's code of ethics, including his usage of derogatory and offensive language against Plaintiff, and repeated acts of discrimination against her.

56.    Plaintiff believes and avers that no legitimate business reason existed for the termination of her employment and that Defendant actually terminated her employment based on her age, her actual and/or perceived disabilities and/or record of impairment, and/or in retaliation for opposing unlawful discrimination in the workplace.

## COUNT I
### (ADEA – Age Discrimination, Hostile Work Environment, Retaliation)
### Plaintiff v. Defendant

57.    Plaintiff incorporates by reference paragraphs 1 through 56 of this Complaint as though fully set forth at length herein.

58.    The actions of the Defendant, through its agents, servants, and employees, in subjecting Plaintiff to discrimination and a hostile work environment based on her age, and retaliation for opposing unlawful age discrimination in the workplace, constituted violations of the ADEA.

59.    As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the ADEA, Plaintiff sustained permanent and irreparable harm, resulting in the termination of her employment, which caused

10

her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

60.     As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the ADEA, Plaintiff has suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT II
### (ADA – Disability Discrimination, Hostile Work Environment, Retaliation)
### Plaintiff v. Defendant

61.     Plaintiff incorporates by reference paragraphs 1 through 60 of this Complaint as though fully set forth at length herein.

62.     The actions of the Defendant, through its agents, servants, and employees, in subjecting Plaintiff to discrimination and a hostile work environment based on her actual and/or perceived disabilities and/or record of impairment, and retaliation for requesting reasonable accommodations for her disabilities, constituted violations of the ADA.

63.     As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff sustained permanent and irreparable harm, resulting in the termination of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

64.     As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

11

## COUNT III
### (PHRA – Age Discrimination, Disability Discrimination, Hostile Work Environment, Retaliation)
### Plaintiff v. Defendant

65.    Plaintiff incorporates by reference paragraphs 1 through 64 of this Complaint as though fully set forth at length herein.

66.    The actions of the Defendant, through its agents, servants, and employees, in subjecting Plaintiff to discrimination and a hostile work environment based on her age and her actual and/or perceived disabilities and/or record of impairment, and retaliation for opposing unlawful age discrimination in the workplace and requesting reasonable accommodations for her disabilities, constituted violations of the PHRA.

67.    As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff has sustained permanent and irreparable harm, resulting in the termination of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

68.    As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

### PRAYER FOR RELIEF

69.    Plaintiff incorporates by reference paragraphs 1 through 68 of this Complaint as though fully set forth at length herein.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and against the Defendant, and order that:

a. Defendant compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination and retaliation;

b. Defendant compensate Plaintiff with an award of front pay, if appropriate;

c. Defendant pay to Plaintiff punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

d. Defendant pay to Plaintiff pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

e. The Court award such other relief as is deemed just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

THE GOLD LAW FIRM, P.C.

By:  /s/ Sidney L. Gold, Esquire
SIDNEY L. GOLD, ESQUIRE
I.D. No.:  21374
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999
**Attorney for Plaintiff**

DATED: July 23, 2026

13

**<u>VERIFICATION</u>**

I hereby verify that the statements contained in this **Complaint** are true and correct to the best of my knowledge, information and belief.  I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

DATE: 07/21/2027

_Bernadette Calse_
BERNADETTE CALSE, PLAINTIFF